IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 08-659 |
| | : | |
| v. | : | CIVIL ACTION NO. 13-6702 |
| | : | |
| TERRANCE CHATMAN | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                      **December 23, 2015**

Defendant Terrance Chatman has filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, asserting claims of ineffective assistance of counsel and due process violations. Because the record conclusively shows Chatman is not entitled to relief on any of his claims, the motion will be denied without an evidentiary hearing.

## FACTS

On December 14, 2007, state parole agents conducted a search of Chatman's residence and seized several baggies of cocaine and a fully loaded handgun from a hiding place above the ceiling tiles in Chatman's bedroom. On October 28, 2008, a federal grand jury returned a four-count indictment charging Chatman with possession of cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[1] In August 2010, prior to trial, the Government filed an information pursuant to 21 U.S.C. § 851, charging

---

[1] Chatman was originally charged in state court with narcotics and firearms offenses arising out of the December 2007 search. While on bail pending the disposition of the state charges, however, Chatman was arrested and charged with aggravated assault and related offenses in connection with a September 29, 2008, stabbing. Following this new arrest, the state charges were nolle prossed, and Chatman was charged federally in this case.

Chatman with having previously been convicted, in July 1996, of multiple felony counts of possession of cocaine with intent to deliver and conspiracy to possess cocaine with intent to deliver.  The filing of the § 851 notice had the effect of increasing the statutory penalties to which Chatman could be subjected on the drug counts.

Chatman proceeded to trial in November 2010.  At trial, Chatman testified in his own defense, admitting the cocaine seized from his residence belonged to him and that he was selling drugs at the time, but asserting the gun belonged to his then-girlfriend, who often stayed with him and who carried the gun for protection.  On November 3, 2010, the jury convicted Chatman of all four counts.

In anticipation of sentencing, the probation office conducted an investigation and prepared a Presentence Investigation Report (PSR) for Chatman.  The original PSR, prepared on February 23, 2011, and circulated in revised form on March 15, 2011 (hereinafter, the "original PSR"), classified Chatman as both a career offender and an armed career criminal under the Federal Sentencing Guidelines.  *See* U.S. Sentencing Guidelines Manual (hereinafter "U.S.S.G.") §§ 4B1.1 (career offender), 4B1.4 (armed career criminal) (U.S. Sentencing Comm'n 2010). Using the career offender guideline, which produced the higher sentencing range, the PSR assigned Chatman an offense level of 37 and a criminal history category of VI, resulting in an advisory Guidelines range of 360 months to life.  Taking into account the 60-month mandatory minimum consecutive sentence on the § 924(c) charge, the PSR calculated Chatman's effective advisory Guidelines range as 420 months to life.

On April 1, 2011, Chatman's trial counsel filed a sentencing memorandum in which he objected to Chatman's classification as both a career offender and an armed career criminal, arguing Chatman had only one qualifying predicate conviction—the July 1996 drug conviction

referenced in the Government's § 851 notice—not the two prior convictions required for career offender status or the three prior convictions required for armed career criminal status.[2]  The probation officer thereafter issued a further revised PSR on April 14, 2015 (hereinafter the "final PSR").  The final PSR no longer classified Chatman as a career offender, but continued to classify him as an armed career criminal based on his July 1996 conviction for drug offenses committed on three different days in June and July 1995.  Final PSR ¶¶ 37, 45-47.  The July 1996 conviction encompassed sales of cocaine to a confidential informant on June 7, 1995, and June 12, 1995, for which Chatman was charged with and pleaded guilty to separate counts of manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance.[3]  *Id.* ¶¶ 45-46 & n.5.  The conviction also encompassed Chatman's guilty plea to a charge of criminal conspiracy to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance based on the July 20, 1995, seizure of drugs, drug paraphernalia,

---

[2] To qualify as a career offender under the Sentencing Guidelines, a defendant must, inter alia, have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  To qualify as an armed career criminal, a defendant must have at least "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1); *see also* U.S.S.G. § 4B1.4 cmt. n.1.  Although the definitions of "violent felony" and "serious drug offense" under the Armed Career Criminal Act are similar to the definitions of "crime of violence" and "controlled substance offense" under the career offender guideline, the analysis as to whether a particular prior conviction is a qualifying predicate conviction is different for each enhancement.  *See* U.S.S.G. § 4B1.4 cmt. n.1.  For example, for a defendant to qualify as a career offender, the sentences for at least two of the defendant's prior felony convictions be counted separately under the provisions of U.S.S.G. § 4A1.1(a), (b), or (c).  *See* U.S.S.G. § 4B1.2(c).  The armed career criminal guideline, in contrast, includes no similar restriction.

[3] The original PSR characterized the drug sales for which Chatman was convicted as having occurred only on June 12, 1995.  Original PSR ¶ 45.  The final PSR clarified Chatman was convicted of drug sales occurring on June 7, 1995, as well as on June 12, 1995.  Final PSR ¶ 46. The Court has reviewed the record of Chatman's June 1996 convictions, which confirms the drug offenses to which Chatman pleaded guilty on July 30, 1996, included separate counts of manufacturing, delivering, or possessing with intent to manufacture or deliver cocaine committed on June 7, 1995, and June 12, 1995.

and cash from the residence where Chatman made the earlier drug sales.  *Id.* ¶¶ 45 & n.5, 47. Although Chatman pleaded guilty to all three offenses in the same proceeding, the probation officer concluded the resulting conviction constituted "three previous convictions . . . for . . . a serious drug offense . . . committed on occasions different from one another" and therefore qualified Chatman as an armed career criminal under 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4.  Using the armed career criminal guideline, the PSR assigned Chatman an offense level of 34 and a criminal history category of VI, producing an advisory Guidelines range of 262-327 months, plus 60 months consecutive on the § 924(c)(1) count, for an effective advisory Guidelines range of 322-387 months.

The case proceeded to sentencing on April 18, 2011.  At the sentencing hearing, defense counsel advised the Court that after reviewing the armed career criminal statute and speaking with the probation officer, he agreed Chatman's classification as an armed career criminal in the final PSR appeared correct.  Sentencing Hr'g Tr. 5-6, Apr. 18, 2011.  Defense counsel urged the Court to impose a sentence at the bottom of the advisory Guidelines range and to run the sentence concurrently with the state sentence Chatman received in connection with the stabbing he committed while on bail following his arrest in this case.  The Government, in contrast, advocated for a sentence at the top of the advisory Guidelines range and urged the Court to exercise its discretion to impose the sentence to run consecutively with Chatman's state prison term.  After considering the parties' sentencing arguments, Chatman's statement to the Court, and the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Chatman to a total of 360 months, to be served consecutively to his state-court sentence.[4]

---

[4] The Court imposed a sentence of 300 months on each of the drug counts and the § 922(g) count, to be served concurrently, and a 60-month consecutive sentence on the § 924(c) count.

Chatman appealed, represented by new counsel,[5] raising arguments concerning a portion of the jury instructions, the Court's failure to apply the Fair Sentencing Act of 2010 (FSA) retroactively to Chatman's crack cocaine conviction, and Chatman's classification as an armed career criminal.  On August 27, 2012, the Third Circuit Court of Appeals affirmed Chatman's conviction and sentence in an unpublished opinion.  *United States v. Chatman*, 487 F. App'x 769 (3d Cir. 2012).  Following the United States Supreme Court's denial of certiorari on January 7, 2013, Chatman filed the instant motion pursuant to 28 U.S.C. § 2255 on November 19, 2013. Chatman asserts eight separate grounds for relief, four based on ineffective assistance of counsel and four based on due process violations.  Specifically, Chatman argues his trial counsel was ineffective for (1) failing to object to the proposed jury instructions, (2) failing to investigate whether Chatman would be sentenced under 21 U.S.C. § 851 or to advise Chatman the Government was seeking enhanced penalties under that provision, (3) failing to object to the PSR, and (4) withdrawing an objection to Chatman's classification as an armed career criminal in the final PSR.  Chatman further alleges his due process rights were violated because (1) the PSR contained false information regarding his criminal history, (2) the prosecution misled the Court about its authority to run Chatman's federal sentence concurrently with his state sentence, (3) as a result of the armed career criminal enhancement, this Court imposed a sentence greater than necessary to comply with the purposes of federal sentencing, and (4) the sentence imposed is procedurally and substantively unreasonable.   The Government responded to Chatman's § 2255 motion on April 24, 2014.

---

[5] Following sentencing, this Court granted Chatman's retained counsel leave to withdraw and appointed new counsel to represent him on appeal under the Criminal Justice Act.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the sentencing court to vacate, set aside, or correct his sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law[ ] or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  In evaluating a § 2255 motion, the court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record" and "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Although the threshold for obtaining an evidentiary hearing on a § 2255 motion is "reasonably low," *see United States v. Booth*, 432 F.3d 542, 546 (citation omitted), "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court," *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *see also Booth*, 432 F.3d at 546 (suggesting a § 2255 motion must "allege[] . . . facts warranting relief under § 2255 that are not clearly resolved by the record" for an evidentiary hearing to be warranted (citation omitted)).

A defendant who seeks relief under § 2255 based on a claim of ineffective assistance of counsel must satisfy the two-pronged test set forth in *Strickland v. Washington* by showing (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  466 U.S. 668, 687 (1984).  As to the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  To show counsel's performance was deficient, the defendant must demonstrate the representation "fell below an objective standard of reasonableness" when measured against "prevailing

professional norms." *Id.* at 688. To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An error by counsel, even if outside the range of reasonableness, "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Because a defendant must satisfy both prongs of the *Strickland* test to establish an ineffective assistance of counsel claim, a court reviewing such a claim need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *accord Booth*, 432 F.3d at 546 (noting the Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong because this course of action is less burdensome to defense counsel" (citation and internal quotation marks omitted)).

Chatman first argues his trial counsel was ineffective for failing to object to the jury instructions. Chatman does not identify any particular instruction he contends was objectionable, but instead asserts, without elaboration, that despite being pressed by the Court "for any objections to the proposed jury instructions counsel ultimately failed to [object to] any portion of the instructions making counsel ineffective." Def.'s Mot. 4. As to prejudice, Chatman simply parrots the *Strickland* standard, asserting "[t]here is a reasonable probability of a different outcome had trial counsel objected." *Id.* These conclusory allegations do not satisfy either prong of the *Strickland* test; hence, this claim will be denied.[6]

---

[6] Insofar as Chatman seeks to pursue an ineffective assistance of counsel claim based on his trial counsel's failure to object to the same portion of the jury instructions his appellate counsel challenged on direct appeal, the claim fails for lack of prejudice. On direct appeal, Chatman

argued this Court committed plain error by instructing the jury that a trial is "a quest for truth," in which the "crucial hard-core question" jurors must ask themselves as they sift through the evidence is "where do you find the truth?" *See* Appellant's Opening Br. 13-20, *United States v. Chatman*, No. 11-2244 (3d Cir. Nov. 2, 2011); Appellant's Reply Br. 1-4, *United States v. Chatman*, No. 11-2244 (3d Cir. Feb. 10, 2012). Chatman maintained these instructions, together with the Court's statement that the issue for the jury to decide was whether or not the defendant violated the law, had the effect of diminishing the Government's burden of proof. The Third Circuit rejected Chatman's argument without discussion, remarking only that the claim was "without merit." *Chatman*, 487 F. App'x at 772.

Even assuming it was objectively unreasonable for Chatman's trial counsel not to object to the instructions cited above, Chatman cannot show there is a reasonable probability that, but for those instructions, the jury would have acquitted him. *See Whitney v. Horn*, 280 F.3d 240, 258 (3d Cir. 2002) (noting whether a defendant was prejudiced by trial counsel's failure to object to a jury instruction turns on "what effect, if any, the erroneous instruction had on the jury's verdict"). The instructions appear in two paragraphs of a 30-page jury charge in which the Court instructed the jury at length that Chatman was presumed innocent and had no obligation to prove he was not guilty, and that the burden was on the Government to prove each and every element of the offenses charged beyond a reasonable doubt. *See* Trial Tr. 73-76, 88-90, Nov. 3, 2010. The Court also explained the meaning of reasonable doubt, reiterating that if the jury had "a reasonable doubt about one or more of the elements of an offense charge[d], then [it] must return a verdict of not guilty of that offense," *see id.* at 75-76, and repeated the Government's burden to prove each element of an offense as part of the substantive instructions on each count, *see id.* at 79, 81-82, 85-86.

Toward the end of the charge, the Court made the challenged statements about trials being a quest for the truth and characterized the issue for the jury to decide as "whether or not the defendant has violated federal law." *Id.* at 91-92. Immediately following this statement, the Court again reminded the jury of the Government's burden to prove guilt beyond a reasonable doubt. *Id.* at 92 ("[I]f you find beyond a reasonable doubt that the law has been violated as charged, you should not hesitate to render a verdict of guilty because of sympathy or bias or prejudice, fear of public opinion or your own views as to the propriety or social desirability of this conduct."). Viewed in the context of the entire charge—in which the Court repeatedly emphasized that to convict Chatman of any of the offenses charged, the jury must find the Government proved each element of the offense beyond a reasonable doubt—it is not reasonably probable that the jury could have understood the challenged instructions to permit a conviction based on a lower standard of proof. *Cf. Victor v. Nebraska*, 511 U.S. 1, 6, 22-23 (1994) (holding jury instructions did not violate the defendants' due process rights where, considered as a whole, "the instructions correctly conveyed the concept of reasonable doubt to the jury," and there was no reasonable likelihood the jury applied the instructions so as to diminish the Government's burden of proof (citation omitted)); *United States v. Venord*, 260 F. App'x 486, 487-88 (3d Cir. 2008) (holding a jury instruction defining the trial as a "quest for truth as to the facts" did not amount to plain error where the court "in no way equated—or even connected—the Government's burden of proof with this quest" and "repeatedly reminded the jury of the Government's burden and its parameters"). Nor is it reasonably probable that had the challenged instructions been omitted, the outcome at trial would have been different. Accordingly, insofar

Chatman next asserts his trial counsel was ineffective for failing to investigate whether he would be sentenced under 21 U.S.C. § 851 and for failing to alert him the Government was seeking an enhanced sentence under that provision.  Even assuming Chatman could show his counsel's performance with respect to the § 851 enhancement was deficient, he has made no showing counsel's performance prejudiced him in any way.

21 U.S.C. § 841(b) provides for enhanced penalties for certain drug offenses if the defendant committed the offense "after a prior conviction for a felony drug offense has become final."  A court may impose the enhanced penalties set forth in § 841(b) only if, before trial, the Government "files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a).  This notice requirement serves the dual purpose of affording the defendant an opportunity to contest the accuracy of his prior convictions and allowing him to make an informed decision whether to enter a guilty plea or proceed to trial.  *See United States v. Isaac*, 655 F.3d 148, 156 & n.8 (3d Cir. 2011).

On August 10, 2010, approximately three months before trial in this case, the Government filed an information pursuant to § 851 charging Chatman with having previously been convicted of multiple felony counts of possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute in the Court of Common Pleas of Montgomery County on July 30, 1996.  *See* Information Charging Prior Offenses, ECF No. 23. The information (also referred to as an § 851 notice) was served on Chatman's trial counsel by first-class mail as well as through the Court's electronic case filing system.  Although Chatman's

---

as Chatman's first claim implicates the jury instructions challenged on direct appeal, the claim does not provide a basis for relief.

trial counsel received ample pretrial notice that the Government intended to seek enhanced statutory penalties, Chatman alleges his counsel never advised him of this fact. *See* Def.'s Mot. 5.[7]

If true, Chatman's allegation that his trial counsel failed to alert him to the enhanced penalties he faced as a result of the Government's filing of the § 851 notice may be sufficient to establish that counsel's performance was deficient. To establish his counsel was constitutionally

---

[7] At the time Chatman committed and was indicted for the offenses in this case, the drug quantity involved in the crack cocaine count (21.89 grams) was sufficient to trigger the penalties set forth in 21 U.S.C. § 841(b)(1)(B)—i.e., a five-year mandatory minimum and a 40-year statutory maximum without the § 851 enhancement, and a ten-year mandatory minimum and a maximum of life imprisonment with the enhancement. On August 3, 2010, prior to trial, however, the FSA took effect and increased the quantity of crack cocaine necessary to trigger the penalties set forth in § 841(b)(1)(B) from five to 28 grams. Under the statute as amended by the FSA, the crack cocaine quantity involved in this case was sufficient to trigger only the lesser penalties set forth in § 841(b)(1)(C) on the crack cocaine count—i.e., a 20-year statutory maximum without the § 851 enhancement, and a 30-year statutory maximum with the enhancement. When Chatman was sentenced in April 2011, whether the FSA applied retroactively to defendants sentenced after the statute's effective date for offenses committed before that date was an open question in the Third Circuit. Neither party raised the issue of FSA retroactivity in this case, however. The PSR, to which the parties did not object, recited that, in light of the filing of the § 851 notice, Chatman was subject a to ten-year mandatory minimum and a statutory maximum of life imprisonment on the crack cocaine count pursuant to 21 U.S.C. § 841(b)(1)(B). PSR ¶ 82. At sentencing, the Court, again without objection, repeated the mandatory minimum on the crack cocaine count was ten years and the statutory maximum was life. Sentencing Hr'g Tr. 24.

After sentencing, the Third Circuit and, later, the Supreme Court held the FSA's "more lenient penalty provisions apply to offenders who committed a crack cocaine offense before August 3, 2010, but were not sentenced until after August 3." *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012); *see also United States v. Dixon*, 648 F.3d 195, 196, 203 (3d Cir. 2011) (same). In light of these holdings, the Court's statement that Chatman was subject to a ten-year mandatory minimum and a statutory maximum penalty of life imprisonment on the crack cocaine count was incorrect. In fact, the filing of the § 851 notice only had the effect of increasing the statutory maximum penalty on both drug counts from 20 to 30 years. The Court's error, however, had no effect on the sentence ultimately imposed. Because Chatman was determined to be an armed career criminal, his Guidelines range was 262-327 months, plus 60 months consecutive, well above the ten-year mandatory minimum the Court erroneously believed applied on the crack cocaine count. The Court imposed a Guidelines sentence of 300 months on each of the drug counts and the § 922(g) count, plus 60 months consecutive on the § 924(c) count.

ineffective, however, Chatman must also show this deficiency prejudiced his defense.  He has made no such showing here.  While Chatman alleges that, absent counsel's failure to investigate and bring to Chatman's attention the § 851 notice, "[t]here is [a] reasonable probability of a different outcome," Def.'s Mot. 5, he provides no factual basis for this conclusory assertion. Chatman does not suggest, for example, that the conviction referenced in the § 851 notice was invalid.[8]  Nor does he suggest that, had he known the Government was seeking enhanced penalties on the drug counts, he would have pursued a different course of action that would have had a reasonable probability of producing a different result.[9]  Because Chatman had made no showing of prejudice, his claim regarding the § 851 notice will also be denied.  *See Johnson v. United States*, 294 F. App'x 709, 710-11 (3d Cir. 2008) (holding a defendant's "vague and conclusory claim that his testimony would have rebutted 'every material fact' and every adverse witness" fell "well short" of establishing he was prejudiced by counsel's alleged failure to advise him that he had the ultimate authority to decide whether to testify in his own defense); *cf. Palmer v. Hendricks*, 592 F.3d 386, 394-95 (3d Cir. 2010) (holding a habeas petitioner was not entitled

---

[8] Given the age of the conviction, it is not clear Chatman could have contested its validity in any event.  *See* 21 U.S.C. § 851(e) ("No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.").

[9] At trial, Chatman essentially conceded guilt on the drug counts and contested only the gun counts, which, because of Chatman's status as an armed career criminal, carried an aggregate mandatory minimum sentence of 240 months:  180 months on the § 922(g) count, plus 60 months consecutive on the § 924(c) count.  Chatman does not suggest that had he known about the § 851 notice, he would have contested the drug counts rather than conceding them, or that there is a reasonable probability he could have successfully defended against those charges.  Had Chatman elected to plead guilty to all of the charges against him, including the gun charges, his Guidelines range presumably would have been somewhat lower, assuming he would have received a reduction for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1.  Chatman, however, does not suggest that had he known the Government was seeking enhanced penalties on the *drug* counts, he would have pleaded guilty to the *gun* counts, which carried even higher statutory mandatory minimum penalties.

to an evidentiary hearing on his claim that his counsel was ineffective for failing to advise him of his right to testify in his own defense where the petition provided no factual basis suggesting the petitioner was prejudiced by his attorney's alleged conduct).

Chatman's remaining two ineffective assistance of counsel claims concern his trial counsel's failure to object to Chatman's classification as an armed career criminal in the final PSR.  In his third claim, Chatman faults his trial counsel for failing to submit objections to the final PSR;[10] in his fourth claim, Chatman alleges counsel was ineffective for withdrawing his objection to the armed career criminal classification in the final PSR at sentencing.  Because the PSR properly classified Chatman as an armed career criminal, both claims lack merit.

A defendant is properly classified as an armed career criminal for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and the corresponding Guidelines provision, U.S.S.G. § 4B1.4, if the defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  As the Court of Appeals acknowledged in rejecting Chatman's challenge to the armed career criminal classification on direct appeal, the Third Circuit has adopted a "separate episodes" test for

---

[10] Although the third claim refers to the PSR prepared on February 23, 2011, and revised on March 15, 2011 (i.e., the original PSR), *see* Def.'s Mot. 7, the Court understands this claim to concern counsel's failure to submit objections to the final PSR circulated on April 14, 2011, for two reasons.  First, while Chatman's counsel did not notify the probation officer of his objections to the original PSR within 14 days after the original draft was circulated to counsel, as required under Federal Rule of Criminal Procedure 32(f)(1), counsel did, in fact, object to the original PSR's classification of Chatman as both a career offender and an armed career criminal in his sentencing memorandum filed on April 1, 2011, *see* Def.'s Sentencing Mem. 1-5, ECF No. 60. As noted, the final PSR was not issued until after Chatman's sentencing memorandum was submitted.  Second, in arguing his counsel was ineffective for failing to submit objections, Chatman cites counsel's statement at the sentencing hearing that he did not "have time to formerly [sic] file anything."  Def.'s Mot. 7 (citing Sentencing Hr'g Tr. 5).  This statement concerned counsel's failure to submit a response to Chatman's classification as an armed career criminal in the final PSR, which was circulated four days before the sentencing hearing.  *See* Sentencing Hr'g Tr. 5-6.

determining whether a defendant's otherwise-qualifying criminal convictions are for offenses committed on occasions different from one another. *See Chatman*, 487 F. App'x 769, 771 (3d Cir. 2012) (citing *United States v. Schoolcraft*, 879 F.2d 64, 73 (3d Cir. 1989)).   Under this approach, convictions arising out of separate criminal episodes that are distinct in time can count as separate convictions, even if the defendant incurred the convictions in the same judicial proceeding, particularly if the defendant "had sufficient time to cease and desist the criminal activity" between offenses. *See id.* (citing *Schoolcraft*, 879 F.2d at 73-74, and *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000)); *accord United States v. Norwood*, 566 F. App'x 123, 128 (3d Cir. 2014); *United States v. Jones*, 526 F. App'x 186, 188 (3d Cir. 2013); *Chatman*, 487 F. App'x at 771; *United States v. Grinnage*, 486 F. App'x 325, 331 (3d Cir. 2012); *United States v. Crump*, 229 F. App'x 186, 188-89 (3d Cir. 2007); *United States v. Mucha*, 49 F. App'x 368, 370-71 (3d Cir. 2002).

Chatman's July 1996 conviction encompassed two drug sales that occurred five days apart, and a drug conspiracy charge arising from a search conducted more than a month after the later drug sale.   While the drug sales appear to have been made to the same confidential informant at the same location, "with several days intervening between episodes, [Chatman] clearly had sufficient time to withdraw from the criminal activity," and his convictions therefore count separately under the ACCA. *Crump*, 229 F. App'x at 188-89 (holding drug transactions occurring nine days apart counted as separate offenses even though the transactions occurred within close proximity of one another and the defendant pleaded guilty to both charges at the same proceeding); *see also Jones*, 526 F. App'x at 188 (holding the fact drugs sales occurred nine days apart "establishe[d] that the convictions were separate and distinct," even though they were "disposed of in the same judicial proceedings and the subject of concurrent sentences");

*Grinnage*, 486 F. App'x at 330-31 (holding drug sales "to the same informant, in the same manner, in the same location, [which] were prosecuted together in the same proceeding" constituted separate offenses where the sales occurred on three separate dates); *accord Cardenas*, 217 F.3d at 492 (holding sales of crack cocaine to confidential informants 45 minutes apart "were two separate and distinct episodes" where the sales were not the product of a single agreement with the informants).  Indeed, applying plain error review on direct appeal in this case, the Third Circuit noted it "ha[d] no trouble concluding based on [the record in this case] that the District Court did not plainly err in finding that the three charges constituted 'occasions different from one another.'"  *Chatman*, 487 F. App'x at 771.  Because the final PSR properly classified Chatman as an armed career criminal based on his July 1996 convictions, Chatman cannot show his attorney was ineffective for failing to object to that classification or that the failure to object prejudiced him; hence, Chatman's third and fourth claims will be denied.

With respect to Chatman's claims of due process violations at sentencing, as the Government notes, because Chatman failed to raise any of these claims on direct appeal, the claims are procedurally defaulted and cannot be raised on collateral review, absent a showing of either cause and actual prejudice or actual innocence.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).  Chatman has not made either showing.

In his motion, Chatman asserts he did not raise any of his due process claims on direct appeal because the information on which the claims are based was not available to him at the time of the appeal.  Def.'s Mot. 9-13.  The record does not support this contention.  Chatman's due process claims concern the accuracy of the information about his criminal history in the PSR, the Government's advocacy of a consecutive sentence at the sentencing hearing, and the procedural and substantive reasonableness of the sentence imposed.  Chatman does not identify

any information necessary to his claims that was unavailable to him or his counsel on direct appeal, and in fact both the PSR and the sentencing hearing transcript were available at the direct appeal stage.  Chatman has therefore failed to make a showing of cause for his procedural default.  *See Murray v. Carrier*, 477 U.S. 478, 492 (1986) ("[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.").  Chatman likewise has not made the required showing of actual prejudice, i.e., that the alleged sentencing errors "worked to his actual and substantial disadvantage."  *See United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted).  To the contrary, as discussed below, all of his due process claims lack merit.  With respect to the actual innocence exception, moreover, Chatman does not contend he is actually innocent of any of the crimes of which he was convicted.  And insofar as Chatman suggests he is actually innocent of the enhanced sentence he received as an armed career criminal, he has made no showing to that effect.[11]  Although Chatman alleges his sentence "was based in part of false information in the [PSR]," which misrepresented his prior record, *see* Def.'s Mot. 9, he has not identified any information about his criminal history that is incorrect.

---

[11] Whether the actual innocence exception to procedural default extends to constitutional claims challenging noncapital sentencing error appears to be an open question in the Third Circuit.  *See Cristin v. Brennan*, 281 F.3d 404, 421-22 (3d Cir. 2002) (recognizing the existence of a circuit split "on the question of whether the miscarriage of justice rationale can extend to non-capital sentencings" and finding it unnecessary to reach the issue where the petitioner was not contesting any factual findings on which his sentence was based); *Williams v. Diguglielmo*, No. 08-4160, 2010 WL 2011587, at *4 (E.D. Pa. May 20, 2010) (acknowledging the "Third Circuit has not yet considered whether the actual innocence exception applies to procedural default of claims alleging errors in a noncapital sentence" and declining to apply the exception where the petitioner "submitted no new evidence that he [wa]s actually innocent of his noncapital sentence" and was therefore "ineligible for the exception"); *cf. Dretke v. Haley*, 541 U.S. 386, 393 (2004) (declining to decide whether the actual innocence exception extends to noncapital sentencing errors).

Even if Chatman's due process claims were not procedurally defaulted, they do not provide a basis for relief as the record conclusively shows the claims are meritless.  As noted, Chatman first argues his due process rights were violated because his sentence was "extremely miscalculated" based on allegedly false information in the PSR about his prior record.  *Id.* Chatman correctly observes his criminal history significantly impacted his sentence.  Because of his prior convictions and his conviction of a violation of 18 U.S.C. § 922(g) in this case, Chatman qualified as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. As a result of the armed career criminal classification, Chatman was subject to a 15-year mandatory minimum sentence on the § 922(g) count; the classification also dramatically affected Chatman's advisory Guidelines range, increasing his base offense level from 24 to 34 and producing a sentencing range of 262-327 months, plus 60 months consecutive on the § 924(c) count.  Although Chatman argues the PSR misrepresents his criminal record, he has not identified any information in the PSR that is incorrect.  Notably, while Chatman disputes that his July 1996 drug convictions qualify him as an armed career criminal, he does not suggest the facts in the PSR regarding the conduct underlying those convictions are in any way inaccurate. Because Chatman's allegations regarding false information in the PSR are entirely conclusory, this claim for relief will be denied.  *Cf. Thomas*, 221 F.3d at 437-38 (holding claims involving the alleged failure to interview and call certain witnesses were "too vague to warrant further investigation" where the petitioner identified no potential witnesses).[12]

---

[12]  As the Government notes, insofar as Chatman seeks to challenge the validity of the convictions used to enhance his sentence, he may not do so by way of the instant § 2255 motion as he does not allege the prior convictions were obtained in violation of the right to counsel.  *See Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (holding a defendant "may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion," but may not otherwise use § 2255 to collaterally attack a prior conviction).

Chatman next asserts his due process rights were violated because the Government misled this Court about its authority to impose a sentence concurrent with the state sentence Chatman was serving at the time of the trial in this case. The record shows otherwise. In its sentencing memorandum, the Government explicitly recognized the Court had discretion as to how to run the federal sentence, arguing the Court should "exercise its discretion, pursuant to U.S.S.G. § 5G1.3(c)," to impose a consecutive sentence. *See* Gov't's Suppl. Sentencing Mem. 1-2, ECF No. 67. At the sentencing hearing, moreover, the Government argued only that a consecutive sentence was warranted based on the circumstances, not that such a sentence was required. *See* Sentencing Hr'g Tr. 17-21. Because the record conclusively shows the Government did not mislead the Court about its ability to impose a concurrent sentence, as advocated by defense counsel and recommended by the probation officer, this claim will be denied.

Chatman's remaining due process claims concern the procedural and substantive reasonableness of the sentence imposed. Chatman asserts the application of the armed career criminal guideline resulted in a "fundamental miscarriage of justice" by producing a sentence "greater than necessary." Def.'s Mot. 12. He also maintains the sentence imposed is procedurally and substantively unreasonable because it is "undul[]y harsh." *Id.* at 13. In both claims, he asserts a sentence within the Guidelines range calculated without the armed career criminal enhancement would have been a sufficient penalty in his case.

In sentencing a defendant, a district court must follow a three-step process. *See, e.g.*, *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). First, the court must calculate the applicable Guidelines range. *See id.* Second, the court must rule on any departure motions and, if a departure is granted, explain how the departure affects the Guidelines calculation. *See id.*

Third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a), including the applicable Guidelines range, and determine the appropriate sentence, which may vary upward or downward from the Guidelines range. *See id.* A sentence is procedurally unreasonable if the district court committed a significant procedural error in the sentencing process, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* The substantive reasonableness of the sentence turns on "whether the record as a whole reflects rational and meaningful consideration of the [§ 3553(a) factors]." *Id.* at 568 (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). A sentence is substantively unreasonable only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.*

Chatman has provided no basis for the Court to conclude the 360-month sentence imposed in this case was procedurally or substantively unreasonable. With respect to the procedural reasonableness of the sentence, Chatman contests only the application of the armed career criminal guideline, but, for the reasons set forth above, the Court concludes Chatman was properly classified as an armed career criminal.[13] As to substantive reasonableness, Chatman

---

[13] Chatman does not suggest the Court made any other procedural error in sentencing him, and, at the sentencing hearing, the Court recognized the Guidelines are only advisory, considered the § 3553(a) factors in some detail, and explained the reasons for the sentence selected and for imposing the sentence to run consecutively to Chatman's state sentence. *See* Sentencing Hr'g Tr. 23-30. The Court did err in articulating the statutory mandatory minimum and maximum penalties to which Chatman was subject on the crack cocaine count, stating the statutory range was ten years to life, *id.* at 24, when in fact, because the FSA applied retroactively, there was no mandatory minimum and the statutory maximum term of imprisonment was 30 years. Because even the bottom of Chatman's Guidelines range (262 months) was well in excess of the ten-year mandatory minimum the Court erroneously believed applied (and well in excess of the 15-year mandatory minimum to which Chatman was subject on the § 922(g) count), and because the

argues the sentence imposed is unduly harsh, noting a sentence within the Guidelines range calculated without applying the armed career criminal enhancement would have been sufficient punishment in this case.  The Court disagrees.  After hearing from the parties and from Chatman at the sentencing hearing, the Court considered the § 3553(a) factors and concluded a sentence within the properly calculated advisory Guidelines range—which included an armed career criminal enhancement—was appropriate in the circumstances of this case.  Such circumstances included the nature and timing of Chatman's offenses, which he committed while on parole less than four months after being released from state prison and his significant criminal history, which reflects a trend of escalating violence and a troubling pattern of recidivism, including the commission of a stabbing while on bail in this case.  *See* Sentencing Hr'g Tr. 25-28.  Chatman has not shown the sentence imposed or the justifications supporting it are outside the bounds of reasonableness.  Chatman's claims that the sentence imposed violated his due process rights will therefore be denied.

Because, for the reasons set forth above, the record conclusively shows Chatman is not entitled to relief on any of the claims in his § 2255 motion, the motion will be denied without an evidentiary hearing.  Chatman's motion for appointment of counsel will also be denied.[14]

---

penalty ultimately imposed on the crack cocaine count (300 months) was below the 30-year statutory maximum on that count, it is apparent Chatman was not prejudiced by this error.

[14] While there is no automatic constitutional right to counsel in federal collateral review proceedings, a district court has discretion to appoint counsel for a financially eligible § 2255 movant under the Criminal Justice Act when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B); *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).  In determining whether to appoint counsel, a court must consider whether the movant has presented a nonfrivolous claim and whether the appointment of counsel will benefit the movant and the court, taking into account factors such as the complexity of the factual and legal issues in the case and the pro se movant's ability to investigate facts and present claims.  *Reese*, 946 F.2d at 264.  Upon consideration of these factors, and in light of the fact that all of Chatman's claims can be resolved based on the existing

An appropriate order follows.

record, without need for further factual development, the Court is not persuaded appointment of counsel is warranted in this case.