IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-659 |
| TERRANCE CHATMAN | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                                **February 16, 2022**

The Defendant, Terrance Chatman, has filed a motion pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) for compassionate release from the 30-year sentence imposed upon him for possession with intent to distribute cocaine and cocaine base (crack), possession of a firearm in furtherance of a drug trafficking crime and being a convicted felon in possession of a firearm.[1] As Chatman has failed to show he is entitled to relief on any of the grounds raised, his motion shall be denied.

**FACTUAL BACKGROUND**

Chatman has a lengthy history of drug and firearms offenses dating back to 1993, when he was 19 years old. In July 1996, he pled guilty in state court to three separate drug offenses which took place on three different occasions in June and July 1995, and was sentenced to 4-8 years imprisonment. The charges in this case arose while Chatman was on parole from his state sentence and resulted from a search of the basement room he was occupying in his mother's home on December 14, 2007 by state parole officers. That search yielded a .40 caliber loaded semiautomatic pistol, 27.11 grams of cocaine, 21.89 grams of cocaine base and plastic bags, all of

---

[1] Specifically, Chatman was convicted of violating 21 U.S.C. § 841(a)(1), (b)(1)(A) and (b)(1)(B), 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(c)(1) and (e).

1

which were found hidden in the ceiling of Chatman's room.  A digital scale containing a white powder residue, unused latex gloves, a box of plastic bags and $8,000 in cash were also discovered in other locations in the room.  Although Chatman was originally charged with state narcotics and weapons offenses as a result of these findings, while out on bail on these charges, he was arrested and charged with aggravated assault and related offenses in connection with a stabbing on September 29, 2008.  Following that new arrest, Chatman was charged federally in this case and the state charges were nolle prossed.

In August 2010, the Government filed an information pursuant to 21 U.S.C. § 851 charging Chatman with having previously been convicted of the multiple felony counts of cocaine possession with intent to deliver and conspiracy to possess cocaine with intent to deliver in July 1996.  This had the effect of increasing the statutory penalties to which Chatman could be subjected if convicted on the narcotics counts in this case.  On November 3, 2010, Chatman was convicted on all four of the counts against him following a three-day jury trial.  Chatman was subsequently sentenced on April 18, 2011 to 300 months' imprisonment on each of Counts 1, 2 and 4 (charging possession with intent to distribute crack cocaine, possession with intent to distribute cocaine and convicted felon in possession of a firearm) to be served concurrently, and 60 months on Count 3 (charging possession of a firearm in furtherance of a drug trafficking crime) to be served consecutively.  Chatman's sentence thereby totaled 360 months in prison, to be followed by a total of 8 years of supervised release, a $400 assessment and $2,500 fine.  The Court further directed Chatman's federal sentence was to be served consecutively to the sentence he had received from the state court.  His conviction and sentence were upheld on appeal and his pro se motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence was denied on December 23, 2015.

Chatman began serving his federal sentence in May, 2017, following completion of his state sentence. He is presently incarcerated at FCI Berlin and has an estimated release date of January 30, 2043. Chatman has thus far served approximately 63 months of his 360-month term. He filed this pro se motion on March 9, 2021 seeking compassionate release on the grounds that his sentence was improper, the trial evidence did not support his conviction and he is now rehabilitated. In a letter dated August 23, 2021 and a "Supplement Reply" to the Government's Response in Opposition to his motion, Chatman asserted he should also be released because he had contracted COVID-19 and he had a number of health conditions which put him at high risk for an adverse outcome from the virus.

The Government opposes Chatman's motion. For one, it submits the grounds raised in Chatman's original filings do not support compassionate release under § 3582 (c)(1)(A). As for Chatman's medical allegations, the Government notes Chatman was asymptomatic while COVID-19 positive, has made a complete recovery and is now fully vaccinated, and has no underlying chronic medical conditions which would put him at high risk should he again contract the virus.

**LEGAL STANDARDS**

As a general rule, a court "may not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.,* 560 U.S. 817, 819 (2010). There are, however, a few very limited exceptions to this rule. In filing this motion, Chatman invokes 18 U.S.C. §3582(c)(1)(A), which provides:

> **(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –
>
> **(1)** in any case –
>
>> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a

> failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> >
> > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The applicable § 3553(a) sentencing factors appropriate for consideration in relation to Chatman's motion are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C).  By its plain language, the Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) is limited to compassionate release motions initiated by the Bureau of Prisons.[2]  It has not been updated by the Sentencing

---

[2] The Policy Statement is set forth at U.S.S.G. § 1B1.13 and provides:

Commission since passage of the First Step Act[3] which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their own behalf. It is therefore not binding on district courts considering defendant-initiated compassionate release motions and, in determining whether extraordinary and compelling reasons exist, courts are free to consider other reasons raised by a defendant that are not specifically contemplated in the Policy Statement. *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021); *United States v. Bayron*, No. 95-338-1, 2021 U.S. Dist. LEXIS 29846, at *8 (E.D. Pa. Feb. 18, 2021). The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions. *Andrews*, 12 F. 4th at 260. District courts are vested with discretion in their weighing of the § 3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

---

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that –

   **(1)(A)**  Extraordinary and compelling reasons warrant the reduction; or

   **(B)**  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

   **(2)**  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

   **(3)**  The reduction is consistent with this policy statement.

[3] First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221-22.

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1B. Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id,* cmt. n.1B, or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.,* cmt. n. 1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. The defendant bears the burden of proof by a preponderance of the evidence on motions for compassionate release. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

On January 13, 2021, Chatman sought to have the BOP submit a compassionate release motion on his behalf by filing an Inmate Request to Staff form with the Warden of FCI Berlin. In

that Request, Chatman requested the Warden's office to "investigate [his] unfair sentence," resulting from "… an unfair 'stacking provision' that is now illegal under the First Step Act… ." On January 27, 2021, Warden Hazlewood denied his request for the reason that "an institutional request is not the avenue to contest the legality or fairness of [a] sentence." Def.'s Mot. for Comp. Rel., Exhibit "A," ECF No. 103. Chatman alleges he again filed for relief with the Warden of his institution on September 19, 2021 seeking to have a compassionate release motion filed on his behalf on medical grounds, and that he thus exhausted his administrative remedies on October 19, 2021. Def.'s Letter of 9/27/21, ECF No. 110; Def.'s Supp. Reply to Gov't. Resp. in Opp. to Def.'s Mot. to Red. Sent. 1, ECF No. 112. The Warden denied Chatman's request on October 19, 2021 and thus he has satisfied his administrative obligations. Gov't. Sec. Supp. Resp. in Opp. to Def.'s Mot. to Red. Sent. 2, ECF No. 113.

Chatman's first contention that extraordinary and compelling reasons for the reduction of his sentence are presented because he was sentenced under an "unfair stacking provision" which is now illegal under the First Step Act is meritless. Assuming that the "unfair stacking provision" now "illegal" under the First Step Act to which Chatman is referring is the amendment to 18 U.S.C. § 924(c),[4] that amendment affords him no relief. Chatman was convicted of only a single § 924(c)

---

[4] Under the prior version of § 924(c), a defendant faced a 25-year mandatory minimum sentence on a second or subsequent § 924(c) conviction even when or if that second conviction occurred contemporaneously with and in the same criminal proceeding as the first. *See, e.g., Deal v. United States*, 508 U.S. 129, 132 (1993) (holding requirement under § 924(c) of enhanced sentence for subsequent conviction of carrying firearm during crime of violence was applicable to second through sixth of six counts on which accused was found guilty in single proceeding). The First Step Act amended the statute such that § 924(c) now imposes the 25-year mandatory minimum sentence for subsequent offenses only if a defendant already had a final conviction for a § 924(c) offense at the time the second or subsequent such offense was committed. 18 U.S.C. § 924(c)(1)(C)(i).

offense and sentenced to 5 years.  He was not convicted of two such offenses in this matter and did not receive a "stacked" sentence.

Chatman's efforts to again challenge the length of his sentence as an armed career criminal under the guise of compassionate release is also unavailing.  The gist of Chatman's argument is that the Court erred in applying the sentencing enhancement under 18 U.S.C. § 924(e)(1) because, contrary to the findings of the Probation Office and the Court, he was actually not present for one of the three offenses of which he was convicted in state court in July 1996.[5]  Thus, Chatman claims an extraordinary and compelling reason to grant him compassionate release is presented by the length of his sentence.

Chatman, of course, pled guilty to the three crimes in state court and having done so, admitted the truth of the Government's version of events.  Regardless, the Third Circuit, among others, has held that "motions pursuant to § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences." *Okereke v. United States,* 307 F.2d 117, 120 (3d Cir. 2002).  "Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction." *United States v. Musgraves*, No. 20-2702, 840 F. App'x. 11, 13 (7th Cir. 2021).  Hence, "[a] previously rejected claim of sentencing error could never qualify as an 'extraordinary and compelling reason' for a sentence reduction." *United States v. Henderson*, No. 21-1653, 858 F. App'x. 466, 469 (3d Cir. 2021) (per curiam*).  See also*, *United States v. Albanese*, Crim. A. No. 97-359, 2021 U.S. Dist.

---

[5]  The July 1996 conviction resulted from Chatman's guilty plea to charges of manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance which resulted from Chatman having sold cocaine to a confidential informant on June 7, 1995 and June 12, 1995 and to a charge of criminal conspiracy to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance that arose out of the seizure on July 20, 1995 of drugs, drug paraphernalia, and cash from the home where Chatman had made the two earlier drug sales.

LEXIS 109596, *7-*8 (E.D. Pa. June 11, 2021) ("Convictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582 (c)(1)(A)."). Here, Chatman previously appealed his sentence to the Third Circuit, but it was affirmed. *United States v. Chatman*, 487 F. App'x 769 (3d Cir. 2012). He subsequently raised this issue in the § 2255 motion which he filed on November 19, 2013. The Court denied that motion on December 23, 2015 and Chatman sought to appeal. Finding that no jurists of reason would debate the denial of Chatman's § 2255 motion, the Third Circuit denied his request for a Certificate of Appealability. Chatman has therefore litigated the propriety of his conviction and sentence and it cannot serve as an extraordinary and compelling reason warranting a reduction in his sentence now.

Chatman also seeks compassionate release on the basis of the length of his sentence alone. However, the Third Circuit recently considered and specifically rejected this argument in *United States v. Andrews*, 12 F.4th 255 (2021). It held:

> The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance. There is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute. … Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence. (citations omitted).

*Id,* 12 F.4th at 260-261. Here, Chatman's sentence was properly imposed and its length does not present an extraordinary and compelling reason for compassionate release.

Chatman next asserts that his medical conditions present such a threat to his life in concert with the ongoing coronavirus pandemic that he should be granted compassionate release. More particularly, Chatman claims to suffer from hypertension, asthma, and obesity, all of which place him at greater risk of an adverse outcome should he again contract COVID-19.

9

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19. In addition to immunocompromised conditions and cancer, chronic lung diseases like moderate-severe asthma, obesity and "possibly hypertension" are listed. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. In the United States, there have been a total of some 77,516,009 diagnosed cases of COVID-19 which have resulted in more than 915,425 deaths to date. Although some 80.7% of people 5 years and over have received at least one dose of a COVID-19 vaccine, community transmission throughout the U.S. continues to be listed as "high." www.covid.cdc.gov/covid-data-tracker/#vaccineeffectiveness.

As this Court has previously recognized, "COVID-19 poses a unique challenge to the prison system." *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020). In response to the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19. Mitigation measures include restricting and/or limiting visits such that all are either suspended altogether or are non-contact; restricting the number of visitors allowed, and decreasing the length and frequency of visits; mandating testing and masking of all inmates, staff, and visitors; maximizing social distancing; and mandating frequent cleaning of all facilities, daily symptom and temperature checks of inmates, and quarantining of all new inmates. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. The operational status of each institution is determined based on a number of health indicators, including the level of transmission within each institution and in the surrounding community, and the number of inmates and staff with completed vaccinations. Although mitigation measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status. www.bop.gov/coronavirus/covid19_status.jsp. Chatman is

presently housed at FCI Berlin in New Hampshire, which has a total population of 752 male inmates. Currently, FCI Berlin's COVID-19 Operations Level is at "3", which is the highest and most stringent with normal operations and all visiting suspended until further notice. www.bop.gov/locations/institutions/ber. Presently, there are 4 inmates and 9 staff who are positive for COVID-19. To date, the institution has had no inmate or staff deaths and a total of 486 inmates and 72 staff members have recovered from the virus since the pandemic began. www.bop.gov/coronavirus/.

Chatman's medical records reflect that he is 47 years old and currently suffers from essential primary hypertension, vitamin D deficiency, osteoarthritis of the knees and has a history of bursitis and common migraine. There is nothing in his medical records to indicate he has asthma nor is it clear whether he is in fact obese, although his records from 2018 indicate that he had a BMI at that time of 30, weighing 204 pounds over a 5'7" frame.[6] Chatman tested positive for COVID-19 on or about August 5, 2021 which resolved by August 23, 2021. He suffered mild, flu-like symptoms during the course of his illness and in view of his continuing complaints of shortness of breath and fatigue, he was prescribed an albuterol inhaler for approximately 2 months afterward. A chest x-ray taken in mid-October 2021 was normal. Chatman's medical conditions are being managed effectively with hydrochlorothiazide for blood pressure, vitamin D supplementation, Tylenol for pain management and knee braces, and he received two doses of the Moderna COVID-19 vaccine on September 4 and October 12, 2021. The Court finds from the foregoing evidence that the COVID-19 virus is being controlled effectively at FCI Berlin and Chatman's medical conditions pose no threat to his health greater than what he would face if he

---

[6] In fact, the Court has reason to believe Chatman has lost weight insofar as he complained to the medical unit that he was fatigued and short of breach following his "intense workouts."

were not incarcerated.  Chatman has simply not made the showing necessary to convince this Court that extraordinary and compelling circumstances warranting his compassionate release are presented by virtue of his underlying health conditions.

Nor does the Court find the § 3553(a) factors to militate in favor of Chatman's compassionate release either.  The charges against Chatman in this case arose several months after he was freed from state prison, where he had been serving a sentence of 4-8 years for participating in multiple drug transactions. While on parole, Chatman aroused the suspicion of state parole authorities when he was observed driving and breaking his curfew on several occasions, both of which were violations of the terms of his release.  In addition to finding significant quantities of both cocaine and cocaine base and related paraphernalia and cash hidden throughout his room, a loaded .40 caliber semiautomatic weapon was also found secreted in the ceiling.  As if this weren't enough, while out on bail for these offenses, Chatman was involved in a stabbing in Chester County.

The nature of these circumstances and the violent behavior exhibited by Chatman made the need to impose a lengthy sentence self-evident.  Although Chatman avers he has "made productive use of his time incarcerated," "has held numerous jobs," "currently serves as an orderly in Safety," "participates in prison recreational activities, reads many books, and faithfully attends religious services," he also admits "his institutional record is not blemish-free." Def.'s Mot. for Comp. Rel., 10, ECF No. 103.  The Government notes Chatman so far has lost 82 days of good conduct time as the result of two serious disciplinary infractions for possessing a hazardous tool (cell phone battery) and a dangerous weapon (sharpened instrument on June 10, 2020).  Gov't Resp. in Opp. to Def.'s Mot. for Comp. Rel. 5, ECF No. 104.  Although the Court is pleased to hear Chatman has been making some positive changes, it is clear that Chatman's criminal and personal history

and characteristics, the circumstances of his crimes and his recent behavior all demonstrate the continuing need for his sentence to reflect the seriousness of his offenses, promote respect for the law, provide just punishment, deter future criminal conduct and protect the public from the possibility that Chatman will commit further crimes. The Court therefore concludes its discretion is properly exercised in denying Chatman's motion for compassionate release.

    An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,         C.J.